**Tony LY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–95 00789–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 12, 1995.

Victor R. Blaine, Houston, for Appellant.

John B. Holmes, Jr., Ernest Davila, Rick Molina, Houston, for Appellee.

Before COHEN, HEDGES and TAFT, JJ.

## OPINION

TAFT, Justice.

Appellant was convicted of aggravated perjury. The court assessed punishment at three-years confinement. Appellant was released on an appeal bond, conditioned upon his participation in the Electronic Monitoring Supervision Program.[1] The court order required appellant to remain on home curfew between 9 p.m. and 8 a.m. daily.

We are asked to review the admissibility of computer generated records and the sufficiency of such evidence in proving appellant violated his curfew as a basis for the trial court's bail revocation. We affirm.

### Facts

On June 20, 1995, at 9:13 p.m., the electronic monitoring computer reported that appellant was outside the permitted range of the receiver. The computer reported that appellant returned within range of the receiver at 10:10 p.m. The next day, Sharon Patton, a Harris County Pre–Trial Services employee, responsible for supervising individuals on electronic monitoring as a condition of bond, reported the violation. The court revoked appellant's appeal bond and ordered his arrest. In a hearing held July 5, 1995, the court concluded that appellant had violated the conditions of his curfew and further found that there existed good cause to believe that appellant would not appear when his conviction became final or would

---

1. This program is authorized by Tex.Code Crim P.Ann. art. 17.44 (Vernon Supp.1995).

likely commit another offense while on bond. The court thus upheld the revocation of appellant's bond. Appellant filed notice of appeal pursuant to Tex.Code Crim.P.Ann. art. 44.04(g) (Vernon Supp.1995).

## Admissibility of Computer Generated Documents

In his first point of error, appellant asserts that the trial court erred in admitting State's Exhibit Two, a printout generated by the computer used for electronic monitoring at the Harris County Pre–Trial Services. Specifically, appellant contends that the printout constituted inadmissible hearsay, and that the State did not prove the reliability of the electronic monitoring system. The State offered the computer generated printout to show appellant violated curfew, a condition of his appeal bond.

### A. Hearsay

 "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See Burleson v. State,* 802 S.W.2d 429, 439 (Tex.App.—Fort Worth 1991, pet. ref'd) (rejecting appellant's hearsay objection to computer generated display); Tex.R.Crim. Evid. 801(d). "A 'declarant' is a person who makes a statement." *Murray v. State,* 804 S.W.2d 279, 283 (Tex.App.—Fort Worth 1991, pet. ref'd); Tex.R.Crim.Evid. 801(b). "A 'statement' is (1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by him as a substitute for verbal expression." *Murray,* 804 S.W.2d at 283; Tex.R.Crim.Evid. 801(a).

 A computer self-generated printout that does not represent the output of statements placed into the computer by out of court declarants is not hearsay. *See Murray,* 804 S.W.2d at 284 (concerning electronic door lock recording device); *Burleson,* 802 S.W.2d at 439–40 (involving computer generated display to show the number of records missing from payroll commission file). The computer printouts at issue in the *Murray* and *Burleson* cases were the results of an automatic recording device, much like the printout in this case. As in this case, the

electronic recording device was activated automatically; it was not the result of the observations or reproduction of statements entered into the device by a declarant. *See Murray,* 804 S.W.2d at 284 (explaining computer stored data is hearsay whereas computer self-generated data is not); *Burleson,* 802 S.W.2d at 439–40 (equating computer generated evidence to a snapshot). Because there is no reliance upon human input, the determination that such computer self-generated data is not hearsay is in accord with rule 801. *See Murray,* 804 S.W.2d at 284 (explaining that a machine cannot be a declarant nor make statements).

Appellant relies upon *May v. State,* 784 S.W.2d 494 (Tex.App.—Dallas 1990, pet. ref'd), where the trial court had allowed the State to introduce testimonial evidence of an intoxilyzer readout to prove May's insobriety. The appellate court determined that testimony of an operator repeating information observed on a computer readout constituted inadmissible hearsay. *Id.* at 497. *May* is distinguishable from this case because here the printout itself was introduced into evidence.

In this case, State's exhibit two is not hearsay because it does not represent the output of statements placed into the computer by out of court declarants. Rather, the exhibit is tangible evidence which was generated instantaneously by the computer itself as part of the computer's internal system. The system was designed to monitor, report, and record whether an individual, participating in the electronic monitoring program, is outside the permitted range of the receiver during curfew hours. Because the computer printout did not rely upon the assistance, observations, or reports of a human declarant, it did not constitute hearsay. The computer merely reported appellant's movements, which were not intended by him to be a substitute for verbal expression.

We conclude that the electronic monitoring computer printout did not constitute hearsay.

### B. Reliability of Computer Generated Results

 Although appellant's first point of error specifically targets hearsay, it also ap-

pears to attack the reliability of the computer generated printout. Appellant seems to depend upon *May v. State,* 784 S.W.2d at 497, for the proposition that the computer generated printout constituted hearsay because Patton was not familiar with the scientific principles behind the electronic monitoring system. In *May v. State,* 784 S.W.2d at 498, the court held:

> If the State seeks to introduce intoxilyzer test results into evidence it must establish: (1) that the machine functioned properly on the day of the test as evidenced by the running of a reference sample through the machine; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine; and (3) proof of the results of the test by a witness or witnesses qualified to translate and·interpret such results so as to eliminate hearsay.

*See Vanderbilt v. State,* 629 S.W.2d 709, 729 (Tex.Crim.App.1981); *see also Harrell v. State,* 725 S.W.2d 208, 209–10 (Tex.Crim.App. 1986).

*May* is distinguishable from the instant case. *May* only concerns the proper predicate needed to introduce intoxilyzer test evidence at trial pursuant to the statutory provisions addressing the admissibility of alcohol breath tests.[2]

Here the computer is not an intoxilyzer, but an electronic recording device. Therefore, the State did not have to satisfy the three prong test cited in *May.* Because an intoxilyzer is a technical instrument, whose internal operations are not easily understood by the layman, courts have required a qualified witness to testify that the intoxilyzer was operated by one who understands the scientific theory of the machine. *May,* 784 S.W.2d at 498. Such evidence establishes the reliability of the intoxilyzer results and supports the admissibility of scientific test results.

*Shannon v. State,* 800 S.W.2d 896, 902 (Tex. App.—San Antonio 1990, pet. ref'd). Thus, appellant's contention that the State must establish that Patton understood the scientific theory of the machine is without merit.

Courts that have addressed this issue have not set out a particular test for establishing the reliability of computer generated printouts. *Murray,* 804 S.W.2d at 284; *Burleson,* 802 S.W.2d at 441. However, the *Murray* court did provide some insight for determining whether the State has met its burden of proving reliability. In *Murray,* the court upheld a trial court finding that the printout process was reliable where the State presented testimonial evidence showing the accuracy and proper operation of the computer. *Murray,* 804 S.W.2d at 284.

During trial, Patton testified to the reliability and accuracy of the electronic monitoring system. She further testified that Digital Products Corporation, the vendor and manufacturer of the electronic monitoring equipment, was also contacted on June 20th to verify that the electronic equipment was operating properly. Patton's testimony established that the monitor was trustworthy with respect to the information which appeared on the computer printout and that the computer was working properly when the printout was generated. *Burleson,* 802 S.W.2d at 441. Moreover, no controverting evidence was offered by appellant to indicate that the computer was not reliable or was not operating properly when the printout was generated.

We conclude that the State adequately proved the reliability of the computer printout.[3]

## C. Summary

Having concluded that the computer generated printout was not hearsay and that the

---

**2.** Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5, § 3(b) (Vernon Supp.1995) provides for the admissibility of intoxilizer results, so long as the test is performed according to rules of the Texas Department of Public Safety.

**3.** The Texas Rules of Criminal Evidence do not appear to contemplate any particular predicate for the introduction of computer generated evidence. The proper analysis would thus be the balancing test of Tex.R.Crim.Evid. 403 as to whether such evidence, though relevant, had probative value which was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or considerations of undue delay or needless presentation of cumulative evidence.

electronic monitoring procedure was shown to be reliable, we overrule appellant's first point of error.

### Sufficiency of the Evidence

In his second point of error, appellant avers that the State did not establish by a preponderance of the evidence that appellant failed to remain within the range of the electronic monitoring receiver during the designated curfew. Specifically, appellant argues that testimony from the State's sole witness, Sharon Patton, was not sufficient to establish he violated a condition of his appeal bond.

Pursuant to TEX.CODE CRIM.P.ANN. art. 44.04(c) (Vernon Supp.1995), the trial court revoked appellant's bail, concluding by a preponderance of the evidence that the State proved appellant violated a condition of his appeal bond. The court made this finding even though appellant, along with three defense witnesses, testified that appellant was present in his home in compliance with the conditions of his curfew. "The fact finder is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties." *Turney v. State,* 859 S.W.2d 500, 502 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). Thus, the trial court here, as fact finder, was entitled to find the testimony of appellant's witnesses incredible.

We conclude that the computer generated printout, explained by the testimony of Sharon Patton, was sufficient to prove by a preponderance of the evidence that appellant had violated the condition imposed upon him by the appeal bond.

We overrule appellant's second point of error.

### Conclusion

We affirm the trial court's order revoking appellant's appeal bond.