NO. 07-11-0116-CR

NO. 07-11-0117-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL A

 

APRIL 13, 2011

______________________________

 

 

JUAN FRANCISCO PACHECO, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

 

 

_________________________________

 

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

 

NOS. 61,408-B & 62,495-B; HONORABLE JOHN B. BOARD,
JUDGE

 

_______________________________

 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

            Pending before this
Court are Appellant's Motions to Withdraw Appeals in which he represents
that he no longer wishes to pursue these appeals.  The motions are signed by Appellant's attorney.  Tex. R. App. P. 42.2(a).  Appellant did not, however, sign the motions
as required by Rule 42.2(a) of the Texas Rules of Appellate Procedure.  Rather, Appellant's signature is affixed to
documents entitled Appellant's Consent to
Motion to Withdraw Appeals in which he confirms that he wishes to withdraw
these appeals.  Therefore, we suspend the operation of
that portion of Rule 42.2(a) insofar as it requires that Appellant's signature
be affixed to the Motions to Withdraw
Appeals and accept Appellant's signature on his Consent to Withdraw Appeals as satisfying the requirements of Rule
42.2(a). 
See Tex. R. App. P. 2.  No
decision of this Court having been delivered, the motions are granted and the
appeals are dismissed.  No motions for
rehearing will be entertained and our mandates will issue forthwith.

 

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice

 

Do not publish.

 

 

 

                                                                                    

 

 

 






-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-08-0418-CR%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-08-0418-CR%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-08-0418-CR%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-08-0418-CR%20opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:54.75pt;
 mso-title-page:yes;
 mso-footer:url("07-08-0418-CR%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
-->








NO. 07-08-00418-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



JULY
20, 2010

 



 

JUSTIN R. CHEEK, APPELLANT 

 

v.

 

THE STATE OF TEXAS, APPELLEE



 



 

 FROM THE COUNTY COURT AT LAW NO. 2
OF LUBBOCK COUNTY;

 

NO. 2008-448,675; HONORABLE DRUE FARMER, JUDGE



 



 

Before QUINN,
C.J., AND CAMPBELL, and PIRTLE, JJ

 

 

MEMORANDUM OPINION

 

            Appellant,
Justin R. Cheek, appeals from his jury conviction of the misdemeanor offense of
driving while intoxicated[1]
and the resulting sentence of 180 days of confinement, probated for eighteen
months, and a fine of $500.  Through one
issue, appellant challenges the trial court=s admission of the results of appellant=s breath test.  Finding no error,
we affirm.

 

 

Background

After a traffic stop by a Lubbock policeman
and field sobriety tests, appellant was arrested.  He was taken to the county jail where a
certified operator performed a breath test on appellant using the Intoxilyzer 5000. 
The operator testified use of the computer-driven machine first required
that he enter certain information, including that identifying the operator and
the subject of the test, appellant.  Appellant
provided two breath samples.  The State=s Intoxilyzer expert testified that the Intoxilyzer generated a “slip” showing appellant=s blood alcohol concentration from the two samples was .120 and .123,
respectively, at the time of the test.  

Appellant presented his case through cross-examination of the State=s witnesses through which he attempted to cast doubt on the validity of
the traffic stop, the officer=s conclusion that appellant was intoxicated, and the results of the
breath test. 

Following the presentation of the evidence, the jury found appellant
guilty as charged in the information.  A
pre-sentence investigation report was ordered and at a later hearing on
punishment the court assessed punishment at confinement for 180 days, probated
for eighteen months, and imposed a $500 fine. 
The trial court certified appellant=s right to appeal.  This appeal
followed.

Analysis

Via his appellate issue, appellant argues the trial court erred when it
allowed the State to introduce into evidence the results of appellant=s breath test because the results of the test were out-of-court
testimonial statements admitted in violation of the Sixth Amendment to the
United States Constitution and Article 1, Section 10, of the Texas
Constitution. 

Confrontation Clause

The Sixth Amendment to the United States Constitution, made applicable
to the states via the Fourteenth Amendment, Pointer v. Texas, 380 U.S.
400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965),
provides that A[i]n all criminal prosecutions, the accused
shall enjoy the right . . . to be confronted with the witnesses against him.@ In Crawford v. Washington, after reviewing the Clause's
historical underpinnings, the Supreme Court held that it guarantees a
defendant's right to confront those Awho >bear testimony=@ against him.  Crawford
v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354,
158 L.Ed.2d 177 (2004). A witness's testimony against a defendant is
thus inadmissible unless the witness appears at trial or, if the witness is
unavailable, the defendant had a prior opportunity for cross‑examination.
Id. at 54.

Appellant’s analysis begins with a discussion in Murray v. State, 804 S.W.2d 279 (Tex.App.—Fort
Worth 1991, pet. ref’d), in which the court addressed
a hearsay objection to the admissibility of a computer printout.  The court drew a distinction between
printouts that constitute “the feeding back of data placed into the computer by
a person” and those reflecting “computer self-generated data.”  The former may be hearsay, the court held,
but the latter may not be hearsay because a mechanical device like a computer
is not a person and cannot be a declarant under the
hearsay rules.  Id. at 284. In Stevenson v. State, 920 S.W.2d 342 (Tex.App.—Dallas 1996 no pet.) (op.
on remand), the Dallas court of appeals applied the same analysis to the report
generated by an Intoxilyzer.  It found an Intoxilyzer
“self-generates” data, and noted that the Intoxilyzer
does not present “a situation in which the information in the printout is
merely feedback of computer-stored data . . . .”  Id. at 343 (citing, inter alia, Murray,
804 S.W.2d at 284).

Appellant urges that the testimony here establishes that the reverse is
true, that is, that the Intoxilyzer 5000 results here
reflect information entered by the operator, and thus should be regarded as
reflecting data not “self-generated” by the Intoxilyzer
but stored by a person, the machine’s operator. 
It follows, appellant argues, that the breath analysis produced by the Intoxilyzer constitutes an out-of-court statement by its
operator.

We need not address the correctness, vel non, of appellant’s argument that the
introduction of results from an Intoxilyzer may
present a Confrontation Clause issue under Crawford,
for the simple reason that the Intoxilyzer operator
testified at appellant’s trial.  The
officer testified to his twenty-year service as a police officer, to his
certification to operate the Intoxilyzer 5000, and to
the necessary protocols for administering breath tests.  He presented detailed testimony concerning
his performance of each of the protocols when he administered the breath test
to appellant.  Appellant’s
cross-examination of the officer was not restricted.

Assuming then, without deciding, that the Intoxilyzer
results constituted an out-of-court testimonial statement of the Intoxilyzer, no Confrontation Clause issue is present
because, “when the declarant appears for
cross-examination at trial, the Confrontation Clause places no constraints at
all on the use of his prior testimonial statements.”  Crawford,
541 U.S. at 59 n.9 (also stating, “The Clause does not bar admission of a
statement so long as the declarant is present at
trial to defend or explain it”).  Crawford cites California v. Green, 399 U.S. 149, 26 L.Ed.2d 489, 90 S. Ct. 1930
(1970) on the point, which opinion states, “none of our decisions interpreting
the Confrontation Clause requires excluding the out-of-court statements of a
witness who is available and testifying at trial.”  399 U.S. at 161.

We find
admission of appellant’s breath test results involved no Confrontation Clause
issue, and the trial court did not err by overruling appellant’s Sixth
Amendment objection.[2]
 Appellant does not present a
contention the Texas Constitution’s requirements differ, so we do not address
his objection based on our State’s constitution. See Muniz v. State, 851 S.W.2d 238, 251-52
(Tex.Crim.App. 1993). Accordingly, appellant’s sole
issue is overruled, and the trial court’s judgment is affirmed.   

                                                                                                James
T. Campbell

                                                                                                            Justice

Do not publish.  











[1]
See Tex. Penal Code Ann. ' 49.04(a) (Vernon 2003).





[2]
Appellant’s argument suggests that a
part of his complaint is that his cross examination of the Intoxilyzer
operator was hindered because the State offered the Intoxilyzer
test results through the testimony of the Intoxilyzer
expert rather than through that of the operator.  Appellant does not explain, and we do not
perceive, how such a circumstance leads to a Confrontation Clause
violation.